**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>        vs.<br><br>PABLO CRISTOBAL AYALA-<br>YUPIT,<br><br>                                    Defendant. | CASE NO. 14cr2057-BEN<br><br>ORDER DENYING<br>MOTION TO DISMISS<br>INDICTMENT |

Now before the Court is Defendant's Motion to Dismiss the Indictment (filed September 30, 2014). Upon review, this Court finds the underlying removal to be valid. Therefore, the motion is denied.

## I. BACKGROUND

Defendant is currently charged in Count Two of the Indictment with the crime of Attempted Reentry of a Removed Alien in violation of 8 U.S.C. § 1326. From the record before the Court, it appears that there is no dispute as to the following salient facts.

Defendant is a citizen of Mexico. He was granted an adjustment to legal permanent resident status on June 25, 1991. On April 29, 2014, he was apprehended north of the Mexico border, in the United States. That arrest gives rise to Count Two of the Indictment. Mr. Ayala-Yupit was first removed by order of an immigration judge on July 25, 2002. The removal order has been reinstated several times since 2002.

Defendant has been convicted of numerous crimes in numerous places over twenty years, according to the Government. The 2002 removal order was premised

- 1 -

1    upon only four of those convictions, at least one of which was deemed to be an

2    aggravated felony because it was a felony drug offense under Minnesota state law.

3    Moreover, under settled law in the Eighth Circuit at the time, a drug offense

4    considered a felony under state law could qualify as an aggravated felony under

5    federal law.

6         Defendant has moved to dismiss the indictment pursuant to 8 U.S.C.

7    § 1326(d).  He argues that his removal in 2002 was fundamentally unfair and

8    violated his right to due process.  He argues that his Minnesota felony drug

9    conviction does not now qualify as an aggravated felony.  He continues the

10   argument saying it was unreasonable for the immigration judge to rely on Eighth

11   Circuit law at the time because the Eighth Circuit view was itself unreasonable, as

12   evidenced by a more recent Supreme Court decision.  Defendant then asserts that if

13   the Minnesota state court conviction is not an aggravated felony, he has a plausible

14   claim that he would have been given some form of discretionary relief.

15        This Court disagrees.  First, Defendant waived his right to pursue his

16   administrative remedies while represented by competent counsel during the

17   immigration hearings in 2002.  Second, the Eighth Circuit's decision was not an

18   unreasonable interpretation of an arguably ambiguous federal statute and the

19   immigration judge was entitled to rely on the settled law of the Eighth Circuit at the

20   time of the removal proceedings in 2002.  Finally, Defendant does not have a

21   plausible claim for discretionary relief because of his many criminal convictions and

22   his lack of family ties in the United States.

23                **II.  CHALLENGING THE UNDERLYING REMOVAL ORDER**

24        An alien who has been deported or removed commits a crime if the alien

25   thereafter "enters, attempts to enter, or is at any time found in, the United States."  8

26   U.S.C. § 1326(a).  One method of violating § 1326 is returning to the United States

27   after entry of a prior removal order.  *See id.* § 1326(a)(1); *see also United States v.*

28   *Vidal-Mendoza*, 705 F.3d 1012, 1014-15 (9th Cir. 2013).

Congress has strictly limited an alien's ability to
bring a collateral challenge to such an order. . . ."  An alien
facing criminal charges may initiate a collateral attack on
the underlying order only if "(1) the alien exhausted any
administrative remedies that may have been available to
seek relief against the order; (2) the deportation
proceedings at which the order was issued improperly
deprived the alien of the opportunity for judicial review;
and (3) the entry of the order was fundamentally unfair."

*United States v. Hernandez-Arias*, 757 F.3d 874, 879-80 (9th Cir. 2014) (citations

omitted).

If the alien establishes a due process violation that prevented his waiver of

appeal from being knowing and intelligent, he is excused from the exhaustion

requirement.  *Id.*  The Due Process Clause guarantees an individual charged with

illegal reentry under 8 U.S.C. § 1326 the opportunity to challenge a prior removal

that underlies the criminal charge.  *United States v. Garcia-Santana*, 743 F.3d 666

(9th Cir. 2014).  The mechanics of such a challenge are the product of thousands of

judicial decisions over several decades.  *Garcia-Santana* fairly states the current

state of the law and is repeated here for reference:

Section 1326(d) codifies this principle.  It authorizes
collateral attack on three conditions: (1) that the defendant
exhausted available administrative remedies; (2) that the
removal proceedings deprived the alien of the opportunity
for judicial review; and (3) that the removal order was
fundamentally unfair.  Removal is  fundamentally unfair,
in turn, if (1) a defendant's due process rights were
violated by defects in his underlying removal proceeding,
and (2) he suffered prejudice as a result of the defects.  An
immigration official's failure to advise an alien of his
eligibility for relief from removal, including voluntary
departure, violates his due process rights.  An alien who
has been convicted of an aggravated
felony is not eligible for voluntary departure in lieu of
removal. [The Defendant's] removal order stated that she
was ineligible for any relief, because she had previously
been convicted of an aggravated felony.  This [case] turns
on the accuracy of that statement.  The government . . . is
challenging the grant of collateral relief . . . on the ground
that [the Defendant's] conviction [ ] qualifies as an
aggravated felony.  If [Defendant's] previous
conviction . . . does *not* qualify as an aggravated felony,

then her prior removal order was constitutionally invalid and cannot support charges under § 1326.  If the conviction *does* qualify as an aggravated felony, then her prior removal order is proper and prosecution may proceed.

To determine whether an offense is an aggravated felony, we use the categorical and modified categorical approaches of *Taylor v. United States,* 495 U.S. 575 (1990), and *Shepard v. United States,* 544 U.S. 13 (2005).  Under the categorical approach, we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony.  The generic definition of an offense is determined by the contemporary usage of the term.  A state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense.  That is, an offense is an aggravated felony if the full range of conduct covered by the [state criminal statute] falls within the meaning of the relevant definition of an aggravated felony.  By contrast, where the state statute of conviction sweeps more broadly than the generic crime, a conviction under the law cannot count as an aggravated felony, even if the defendant actually committed the offense in its generic form.

*Id.* at 670-72 (internal quotation marks and citations omitted).

A drug trafficking offense is an aggravated felony.   However, the Supreme Court determined that a state court conviction for simple possession of a small amount of marijuana without remuneration does not qualify as an aggravated felony.  *See Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013).  *Moncrieffe* teaches,

The INA defines "aggravated felony" to include a host of offenses.  §1101(a)(43).  Among them is "illicit trafficking in a controlled substance."  §1101(a)(43)(B).  This general term is not defined, but the INA states that it "includes a drug trafficking crime (as defined in section 924(c) of title 18)."  In turn, 18 U.S.C. §924(c)(2) defines "drug trafficking crime" to mean "any felony punishable under the Controlled Substances Act," or two other statutes not relevant here.  The chain of definitions ends with §3559(a)(5), which provides that a "felony" is an offense for which the "maximum term of imprisonment

authorized" is "more than one year."  The upshot is that a noncitizen's conviction of an offense that the Controlled Substances Act (CSA) makes punishable by more than one year's imprisonment will be counted as an "aggravated felony" for immigration purposes.  A conviction under either state or federal law may qualify, but a "state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."

*Id.* at 1683 (quoting *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006)).  *Moncrieffe* controls in removal proceedings that occur today.  But *Moncrieffe* and its predecessor, *Lopez v. Gonzalez*, 549 U.S. 47 (2006), had not been decided at the time of this Defendant's removal order in 2002.

The Ninth Circuit, whose decisions control this Court, has recently discussed how to evaluate a § 1326(d) collateral attack on a removal order from a decade ago. *See United States v. Valdez-Novoa*, 760 F.3d 1013 (2014), *petition for reh'g en banc* (filed Sept. 10, 2014).  That decision says that the question must be determined under the law as it existed at the time of the removal order, rather than as it stands today:

[The defendant] correctly points out that we must evaluate this question under the law as it existed in 1999 rather than as it stands today or at any other point in time.  In short, the subsequent fluctuations in our case law concerning whether offenses that punish reckless conduct are crimes of violence cannot decide this case.

*Id.* at 1022.  Consequently, this Court evaluates Defendant's claim today under the law as it existed in 2002.  And since the removal proceedings took place in Minnesota and the state felony drug conviction was a Minnesota state court conviction, this Court looks to the law as it existed in 2002 in the Eighth Circuit.

Mr. Ayala-Yupit pleaded guilty and was convicted on September 17, 1998 of the charge of violating Minnesota's Controlled Substance Crime in the 5th Degree § 152.025 subdivision 2(1).  He was sentenced to serve one year and one day, which was stayed, pending the successful completion of five years probation.  There is no

real question that in 2002, under *United States v. Briones-Mata*, 116 F.3d 308 (8th Cir. 1997), a Minnesota state drug offense treated as a felony under state law qualified as an aggravated felony under the federal immigration law, 8 U.S.C. § 1101(a)(43)(B).  In turn, the immigration judge's reliance on Eighth Circuit law extant in 2002 supports his conclusion that Ayala-Yupit was convicted of an aggravated felony and therefore, not entitled to consideration for any form of discretionary relief from removal.  That finding, to borrow a phrase, "dooms any claim for relief based on a collateral attack of a predicate removal order in a prosecution for illegal reentry under 8 U.S.C. § 1326."  *United States v. Galarza-Bautista*, No. 13-50517, *slip op.*, 2014 U.S. App. Lexis 22527 (9th Cir. Dec. 1, 2014) (mem. disposition).

Had Ayala-Yupit desired, he could have exhausted his administrative and judicial remedies in 2002.  Instead, he waived his rights while represented by counsel.  Like the alien in *Valdez-Novoa*, "[i]nstead of pursuing the available administrative and judicial remedies, [Defendant] waited until he was charged with violating § 1326(a) before deciding to collaterally attack the IJ's determination by asking us to stand in the shoes of an IJ in 1999."  760 F.3d at 1023.  That, the Ninth Circuit declined to do, explaining, "[w]e decline to convert § 1326(d) into a mechanism for invalidating removal orders that are not contrary to circuit precedent and are based on a reasonable reading of the statute at issue."  *Id.*  The reasoning applies with equal force to Ayala-Yupit's claim in this case and dooms his motion to dismiss.  "Section 1326(d) codifies this principle.  It authorizes collateral attack on three conditions: (1) that the defendant exhausted available administrative remedies . . . ."  *Garcia-Santana*, 743 F.3d at 670.  Because an alien must exhaust his remedies to be in a position to collaterally attack a removal order under § 1326(d), the fact that he waived his right to appeal during the removal proceedings, puts an end to the matter.  Ayala-Yupit's § 1326(d) motion is unsupportable.

Defendant makes two additional arguments.

First, he argues that the immigration judge was unreasonable to rely on the Eighth Circuit's reasoning because the reasoning was not followed by the United States Supreme Court four years later in *Lopez*. Defendant argues that the *Lopez* decision described the Eighth Circuit's decision variously as "so much trickery," an "unusual reading," and "passing strange." To be accurate, in each of those passages, *Lopez* was describing the Government's position rather than the Eighth Circuit's decision. On the other hand, to be fair, the Government's arguments were arguments that the Eighth Circuit had agreed with. And the Eighth Circuit's decision – that a state felony could qualify as an aggravated felony under federal law even if the same act would be treated as only a misdemeanor under federal law – was shared by other Circuit Courts of Appeals at the time. The changing law and the various opinions of the Circuit Courts of Appeals on the question of whether a state drug felony could be deemed a federal aggravated felony is described in *United States v. Lopez-Chavez*, 757 F.3d 1033, 1039-40 (9th Cir. 2014) ("At the time of [the defendant's] removal in 2003, there was a circuit split as to whether a conviction that is treated as a felony under state law but as a misdemeanor under federal law can be treated as an aggravated felony under the Controlled Substances Act.").

Although the language of the *Lopez* decision was critical, it did not go so far as labeling the Eighth Circuit's decision "unreasonable," consequently this Court exercises judicial modesty and declines to deem the Eighth Circuit's opinion in 2002 (or the similar opinions of the First, Fourth, Fifth, Tenth, and Eleventh Circuit) to be "unreasonable." Instead, the Eighth Circuit's approach set out a reasonable, if ultimately wrong, conclusion as to how to interpret the federal statute defining aggravated felonies. By extension, it was also reasonable for the immigration judge to conclude that Ayala-Yupit's Minnesota drug felony qualified as a federal aggravated felony, based on the Eighth Circuit precedent in existence in 2002. Therefore, the 2002 removal order was not invalid. This is also sufficient to dispose of the present collateral attack on the 2002 removal order. *See Valdez-Novoa*, 760

F.3d at 1023.

Defendant next argues that Ayala-Yupit's Minnesota drug offense was not a felony at all.  The defense argument goes like this.  In 1999, at the time of sentencing, Minnesota Statutes § 609.13 provided that notwithstanding that a conviction is for a felony, "the conviction is deemed to be a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence."  Ayala-Yupit was ordered on June 26, 2000 to be discharged from probation upon a recommendation: "unsuccessful discharge following 30-day jail term."

Defendant today argues that these facts fit the § 609.13 conversion of a felony conviction to a misdemeanor conviction as a matter of law.  However, the text of the statute and the facts raise several legal questions such as: (1) did Defendant serve 30 days incarcerated and was there a distinction under Minnesota law at the time between "jail" time and "prison" time; (2) if the conviction was later converted to a misdemeanor by operation of Minnesota law, did the original felony conviction still qualify as an aggravated felony under the 8 U.S.C. § 1101(a)(43)(B); (3) was Defendant's attorney at the removal hearing competent if she held the opinion that the felony conviction qualified as an federal aggravated felony, even if it could possibly be later deemed to be a misdemeanor conviction under the operation of § 609.13; and (4) was the immigration judge's conclusion in 2002 that Ayala-Yupit's Minnesota drug conviction was a state felony and thus an aggravated felony under § 1101(a)(43)(B), notwithstanding § 609.13, a reasonable reading of an ambiguous provision that had yet to be resolved by either the Eighth Circuit or the United States Supreme Court?

It is perhaps ironic that Defendant cites a recent decision from the Minnesota Court of Appeals to establish the workings of § 609.13 in 2002.  *See State v. Franklin*, 847 N.W. 2d 63 (Ct. App. 2014).  It is ironic because neither the immigration judge nor Defendant's immigration attorney had the benefit of this

opinion during the time of the removal proceedings in 2002. It is perhaps more ironic because the *Franklin* decision highlights some of the issues faced in considering the effect of § 609.13. For example, *Franklin* discussed whether a state firearm restriction which applied to persons convicted of a Minnesota felony, would also apply after a felony conviction is converted to a misdemeanor under § 609.13. It noted that the Minnesota Supreme Court had held in 1990 (prior to the 2002 removal hearing) that the state's firearm restriction would still be imposed after conversion because of the fact of a felony *conviction*. *See State v. Moon*, 463 N.W. 2d 517 (Minn. 1990). *Moon* explained,

> Section 609.13 does not preclude the legislature from imposing consequences . . . based on an offender's commission of criminal acts which also constitute felonies. . . . [T]he legislature intended the *nature of the offense rather than the subsequent treatment* of the offender to be the basis of the firearms restriction.

*Id.* at 521 (quoted in *Franklin*, 847 N.W. 2d at 66-67) (emphasis added). The immigration judge and Defendant's immigration attorney had only the benefit of the 1990 *Moon* decision.

The state court order discharging Ayala-Yupit from probation on June 26, 2000, noted an "unsuccessful discharge" and reflects that the same 10-year firearm restriction was imposed for felony convictions as was discussed in *Moon*. The order also has printed language which is struck through and an open box left unchecked. That struck-through language by the unchecked box reads: "*This offense is deemed to be a misdemeanor under the provisions of M.S.A. §609.13*." (Emphasis added.) It is evident that the judge ordering Ayala-Yupit's discharge from probation did not intend for the felony conviction to be deemed a misdemeanor.

Two years later, when the immigration judge and Defendant's attorney considered the question whether Ayala-Yupit's Minnesota drug felony conviction qualified as a federal aggravated felony under § 1101(a)(43)(B), no court had resolved the difficult question of the effect of § 609.13 on the federal aggravated felony analysis. This Court finds that the immigration judge's decision, with its

1  implicit finding that the federal aggravated felony analysis should be based on the

2  felony nature of the Minnesota offense rather than any subsequent misdemeanor

3  treatment for some consequences, was a reasonable one in 2002 and thus may not be

4  disrupted now on collateral attack under § 1326(d).  See *Valdez-Novoa*, 760 F.3d at

5  1022-23.

6      Defendant also asserts that he received ineffective assistance of counsel

7  during his removal proceedings.  There is no constitutional right to counsel in a

8  removal proceeding.  *Id.* at 1041.  It does violate the right to due process, however,

9  if the result of immigration counsel's performance is a "proceeding . . . so

10 fundamentally unfair that the alien was prevented from reasonably presenting his

11 case, and prejudice."  *Id.* (citations and internal quotations omitted).  In Ayala-

12 Yupit's removal proceeding[1], this Court finds that the removal proceeding was

13 fundamentally fair, that Ayala-Yupit had an opportunity to reasonably present his

14 case, and that there was no prejudice from his counsel's performance.  His counsel

15 was foreclosed by circuit and state precedent from making as a viable argument in

16 2002, the § 609.13 argues he wishes to make today.

17     Defendant's second-guessing now, of his immigration attorney's decisions in

18 2002, is based on speculation and relies on the recent *Franklin* decision.  He argues

19 that his attorney should have pursued the "obvious" argument that his state drug

20 felony conviction had become a misdemeanor conviction, as a matter of law, by

21 operation of § 609.13.

22     If the answers to the questions raised by § 609.13 were clear in 2002, one

23 might find a reason to question Defendant's counsel's decisions.  However, the

24 operation of Minnesota state law was far from clear in 2002 and arguably suggested

25 that § 609.13 would have had *no effect* on the treatment of Defendant's state felony

---

27  [1]Defendant also makes the argument that key parts of the proceedings were not
   translated into Spanish for Ayala-Yupit, and that an alien who does not speak English
28 is entitled to have proceedings translated into a language he understands.  There is no
   convincing evidence before the Court that Ayala-Yupit did not understand English at
   the time of the removal proceedings.

conviction. Moreover, there is no evidence that Defendant's immigration attorney was incompetent for not pressing this same argument. She may very well have considered the § 609.13 argument and considered it a loser, or decided with her client not to pursue the argument for strategic reasons. There is little evidence in the record making clear why the attorney made the decisions that she made and too much time has passed to engage in speculative second-guessing through hindsight. This is not the same situation recently discussed in *Lopez-Chavez*, where the law of the Seventh Circuit was unsettled in 2003 and an immigration attorney could have made a viable argument that a Missouri[2] state drug felony might not qualify as a federal aggravated felony. 757 F.3d at 1042-43. In the Eighth Circuit, as discussed above, the question had been decided and the argument was not viable in 2002. Consequently, one cannot fault Defendant's immigration attorney for not making an argument that was foreclosed by circuit precedent. This argument does nothing to support the motion to dismiss

Because the Minnesota drug felony qualified as a federal aggravated felony at the time, Defendant was statutorily *ineligible* for discretionary relief. As a result, the follow-up argument about whether he would have had a plausible claim for relief is moot.

In the alternative, even if he should have been eligible, Defendant was not prejudiced because he did not have a plausible claim for discretionary relief. To determine whether an alien had a plausible ground for relief, the Ninth Circuit has adopted a two-step approach. *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 805 (2013). *Rojas-Pedroza* explains,

---

[2]Although Missouri is within the Eighth Circuit, the removal hearing took place in Chicago, Illinois, which is within the Seventh Circuit. *Lopez-Chavez*, 757 F.3d at 1037 n.1. Thus, the Ninth Circuit analyzed the removal proceedings in 2003 according to the law of the Seventh Circuit at the time.

It is a bit odd, that an immigration judge's decision, while governed by the law of the circuit in which the proceeding takes place, will be later judged according to the law of the future circuit in which the alien is later apprehended and charged under § 1326.

1
2
3
4
5
6
7

> Where the relevant form of relief is discretionary, the alien must make a "plausible" showing that the facts presented would cause the Attorney General to exercise discretion in his favor. In determining whether the alien has made this showing, we apply a two-step process. First, we identify the factors relevant to the IJ's exercise of discretion for the relief being sought. Next, we determine whether, in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the alien's own case, it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor. In making this determination, we are not concerned with general statistics. Instead, we focus on whether aliens with similar circumstances received relief.

8
9
10

*Id.* (internal quotations and citations omitted). The factors relevant to a discretionary grant of pre-conclusion voluntary departure are also described by *Rojas-Pedroza* as follows,

11
12
13
14
15
16

> The BIA has long established that in exercising discretion on a voluntary departure application an IJ should take into account both favorable and unfavorable factors. The BIA has consistently maintained this approach. Unfavorable equities include the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident.

17
18
19
20
21
22

*Id.* at 1264-65 (internal quotations and citations omitted). Establishing "plausibility" requires more than establishing a mere "possibility." *Valdez-Novoa*, 760 F.3d at 1023 (citations and quotations omitted). "We reaffirm once more that a defendant is prejudiced under § 1326(d)(3) when he shows that it is plausible, rather than merely conceivable or possible, that an IJ would have granted the relief for which he was apparently eligible." *Id.* The defendant bears the burden of proving prejudice. *Id.* at 1026.

23
24
25
26
27
28

Applying these factors to the unique circumstances of this case, as of 2002, the Court finds that relief was not plausible. In short, on the negative side, Ayala-Yupit had been convicted of numerous crimes in numerous places in the United States over the twenty years preceding his removal proceedings. Also on the negative side, he had no family ties in the United States. On the positive side, he had resided in the United States and been employed for many years as a dairy

specialist.  Also on the positive side, he presented evidence of his rehabilitation and his service as a volunteer for a jail ministry.  However, the negative equities of his extensive criminal record and no family ties far exceeded the positive equities of his residence, employment record, and recent rehabilitation.

Defendant asserts that it is plausible he wold have been afforded voluntary departure and cancellation of removal.  He cites several decisions in support.  Defendant first cites the unpublished opinion in *United States v. Vasallo-Martinez*, 360 F. App'x. 731 (9th Cir. 2009).  This Court is familiar with the case.  Mr. Vasallo-Martinez had four convictions for DUI, but the Court of Appeals found the positive equities of his long residence and work record, plus his U.S. Citizen wife and child and consistent church attendance for 20 years, made the alien's case a plausible one for voluntary departure.  Here, although Ayala-Yupit has some of the same positive equities, he has no U.S. Citizen spouse or child and his criminal record is more extensive.

Next he cites *United States v. Perez*, Case No. 11cr2149 BTM, 2011 WL 3475413 (S.D. Cal. Aug. 5, 2011) (Moskowitz, J.).  In that case, that alien also had a mother and stepfather living in the United States and a U.S. Citizen girlfriend along with a conviction for driving without a license and had been involved in a street gang.  Here again, Ayala-Yupit has no U.S. Citizen spouse or child, no relatives living in the United States, and his criminal record is more extensive.

Next he cites *United States v. Santos-Lagunes*, Case No. 10cr2559 L, 2010 WL 3489326 (S.D. Cal. Sept. 3, 2010) (Lorenz, J.).  In that case, the alien had received a two month sentence for kidnaping a minor in Florida, 240 days of custody for a conviction for grand theft of an account card, and a five month sentence for violating § 1326.  There was no mention of the presence or absence of family ties in the United States.  Here, Ayala-Yupit's criminal record is more extensive in terms of the number of convictions and the 20 years of recidivism.

Next he cites the unpublished opinion of *United States v. Alcazar-Bustos*, 382

Fed. Appx. 568 (9th Cir. 2010).  In that case, the alien was married to a U.S. Citizen and had a U.S. Citizen child.  He had three juvenile adjudications and two firearm possession convictions while in his teens.  Here, Ayala-Yupit has no U.S. Citizen spouse or child and his criminal record is more extensive.

Next he cites five BIA decisions, which are themselves, cited within the unpublished Ninth Circuit opinion of *Vasallo-Martinez*.  He cites *In re Gonzales-Figueroa*, 2005 WL 3833024 (BIA 2006).  That is an incorrect citation apparently copied directly from the incorrect citation in the text of *Vasallo-Martinez*.  In the next case, *United States v. Pineda-Castellanos*, 2005 WL 3833024 (BIA Nov. 16, 2005), the BIA called the grant of voluntary departure "*more than generous*" in light of the alien's criminal record.  (Emphasis added).

The next case, *In re Vallalonga Mante*, 2007 WL 1676929 (BIA Mar. 18, 2007) (remanding to Immigration Judge to weigh merits of voluntary departure where petitioner was convicted of sexual battery), was discussed recently by the Ninth Circuit in *Valdez-Novoa*.  760 F.3d at 1029.  *Valdez-Novoa* found that a BIA remand order says little about plausibility.  *Id.*  The same is true for the remaining BIA decisions remanding for further consideration to the immigration judge, such as the cases of: *In re Guillermo Ramirez*, 2005 WL 698425 (BIA Mar. 8, 2005) (remanding to IJ to consider voluntary departure where petitioner committed robbery, identity theft, use of false name, and was arrested for DUI); *In re Hernandez-Barreto*, 2004 WL 2943517 (BIA Oct. 29, 2004) (remanding case to IJ to weigh merits of voluntary departure where petitioner was convicted for domestic violence, possession of controlled substance, and DUI); *In re Reyes-Jimenez*, 2004 WL 2418597 (BIA Oct. 4, 2004) (remanding to IJ to allow petitioner to apply for voluntary departure where petitioner was convicted of DUI, burglary, and disorderly conduct).

Notwithstanding his positive equities, examination of all of these cases fails to reveal a single case where an alien received voluntary departure with a criminal

history as long and as continuous as Ayala-Yupit's and without any family ties to U.S. Citizens or non-citizen family members living in the United States.  Therefore, this Court concludes that it may conceivable, or possible, but not plausible, that Ayala-Yupit would have been granted voluntary departure when he was deemed removable in 2002.  Therefore, even if his Minnesota drug conviction did not qualify as an aggravated felony, he was not prejudiced by the error.  As a result, the 2002 removal order was not fundamentally unfair and is now a valid predicate to a charge of violating § 1326.

Defendant also argues that it is plausible that he would have been granted cancellation of removal under 8 U.S.C. § 1229b(a).  Cancellation of removal is also a discretionary form of relief.  The cancellation of removal is described in *United States v. Ponce*, Case No. 8cr3239 WQH, slip op., 2009 U.S. Dist. LEXIS 37584 *11-12 (S.D. Cal. May 4, 2009) (Hayes, J.):

> [A] deportable alien is eligible for discretionary relief in the form of cancellation of removal if he (1) has been an alien lawfully admitted for permanent residence for not less than 5 years; (2) has resided in the United States continuously for 7 years after having been admitted in any status; and (3) has not been convicted of any aggravated felony. 8 U.S.C. § 1229b(a).  Even if the underlying removal was fundamentally unfair because the Defendant was eligible for cancellation of removal, Defendant must show that he suffered prejudice as a result of the defect. To prove prejudice, Defendant need not show that he actually would have been granted relief; rather he must show that he had a "plausible" basis for seeking relief from deportation.  Once the Defendant makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the outcome of the proceedings.

(Citations omitted.)  *Ponce* goes on to describe the factors considered when a legal permanent resident applies for cancellation of removal and the plausibility test,

> In order to determine whether to grant discretionary relief from deportation including voluntary departure and adjustment of status the Board of Immigration Appeals is required to examine "all the facts and circumstances of a particular case."  The Court of Appeals has held that "discretionary relief from deportation is a privilege created by Congress, denial of such relief cannot violate a

substantive interest protected by the Due Process clause."
"The Bureau of Immigration Affairs or the Immigration
Judge decides whether an applicant is entitled to a
favorable exercise of agency discretion on a case by case
basis by taking into account the social and humane
considerations presented in the applicant's favor and
balancing then against the adverse factors that evidence the
applicant's undesirability as a permanent resident." The
Immigration Judge and the Bureau of Immigration Appeals
are entitled to consider a defendant's criminal convictions
in connection with an application for discretionary relief or
adjustment of status. The Court of Appeals has stated that
"determining whether section 212(c) relief should be
awarded involves the same type of balancing of equities
the Board must undertake in the discretionary
determinations considered in the adjustment of status and
voluntary departure contexts." The following relevant
factors for deciding eligibility for relief under Section
212(c): length of residence in the United States, work
history, family ties in the United States, evidence of
hardship to the alien and his family if deportation occurs,
service in the armed forces, property or business ties,
evidence of service to the community, existence and nature
of a criminal record, and proof of genuine rehabilitation
from past criminal activity.

*Id.* at *13-14 (citations omitted). Defendant has not identified a case similar to

Ayala-Yupit's where the alien was granted cancellation of removal. Since

cancellation of removal has a standard for eligibility similar to voluntary departure,

and it is not plausible that he would have been granted voluntary departure (as

discussed earlier), it is likewise not plausible that he would have been eligible for

discretionary cancellation of removal, and thus no prejudice has been shown.

## III.  CONCLUSION

Because his 2002 removal order was not fundamentally unfair, and because

even if it was unfair, he has not shown prejudice, Defendant's Motion to Dismiss the

Indictment is hereby denied.

DATED:  December 19, 2014

_____
Hon. Roger T. Benitez
United States District Judge